# WARRANTY—FRAUD—SURETYSHIP—ELECTION OF REMEDIES.

[Lucas (6th) Circuit Court, June 25, 1904.]

Parker, Hull and Haynes, JJ.

## Isaac Harter Co. v. Charles H. Pearson et al.

1. Representation Made in Good Faith Without Knowledge of Facts, Constitutes a Warranty.

A material representation made in good faith by one who is unacquainted with the facts, is in the nature of a warranty, and must be made good to one who has rightfully acted upon it to his injury without knowledge of its falsity.

2. Owner of Goods Fraudulently Taken From His Possession Has Election of Remedies, etc.

Where goods have been fraudulently obtained from the possession of the owner, the liability of the wrongdoer is not only that which arises out of an "indebtedness," but the owner may, at his election, pursue either of the following remedies: Proceed in tort to recover damages for the trespass and asportation; waive the tort, and sue for the value of the goods upon the fiction that the property was sold; or replevin the property, in case it can be reached. The right of election is in the owner only, and the wrongdoer, or one in privity with him, cannot treat the transaction as a sale, or as an "indebtedness," to the prejudice of the former.

3. Liability Arising Out of Fraud not an Indebtedness Without Election of Party Defrauded—Suretyship.

The liability arising out of a fraudulent conversion of property is not a mere indebtedness, unless the person defrauded elects to treat it as such. Hence, where the person defrauded obtains the note of the person defrauding him for an actual indebtedness, and one signs as surety upon the representation of the payee, made in good faith, that the note covers the whole of the indebtedness of the maker, the fact of an additional liability growing out of a prior fraudulent transaction, not then known to the payee, affords no ground of defense against the note to such surety.

4. After Satisfaction of Judgment in Assumpsit, Action for Tort Will Not Lie.

After the satisfaction of a judgment in assumpsit, the owner of property which was fraudulently obtained from him cannot maintain an action in tort against the wrongdoer. Whether he could proceed in tort, after judgment but before satisfaction in assumpsit, *quaere*.

Error to Lucas common pleas court.

E. W. Tolerton, for plaintiff in error.

Swayne, Hayes & Tyler, for defendant in error.

## PARKER, P. J.

The action in the court below was by the Isaac Harter Co. against Charles H. Pearson and Wilbur C. Brown upon a promissory note given

in New York, upon July 9, 1898, but dated July 1, 1898, for $1,500, payable six months after date, to the order of C. H. Pearson, signed by C. H. Pearson and W. C. Brown, and endorsed by Pearson to the Isaac Harter Co. In the court below Pearson did not answer, so that judgment went against him by default. Brown answered that the debt on account of which this note was given was the debt of Pearson; that he, Brown, was surety for Pearson, and he set forth in his amended answer various grounds of defense affecting and accruing to him as surety, but all these various defenses excepting one were eliminated before the case came to trial to the jury. The only defense remaining, and that upon which the case was submitted to the jury, was, that at the time this note was given Mr. Day, a representative of the Isaac Harter Co., on behalf of the company represented to Mr. Brown, in order to induce him to become surety for Pearson, that the whole indebtedness of Pearson to the company was about $4,500, whereas, it is said the indebtedness of Pearson at that time amounted to more than $10,000. Brown says that he was ignorant of this fact, and that if he had known of this large indebtedness he would not have signed as surety. If what he says is true, of course, by the law of the land, he would be discharged from liability. These averments were denied by the Isaac Harter Co. The cause was submitted to a jury, which found in favor of Brown.

The Isaac Harter Co., as plaintiff in error, insists that this finding and the judgment based upon it is wrong; that the court erred in its charge to the jury upon the law of the case; and that the verdict is contrary to the weight of the evidence.

It appears from the record that the Isaac Harter Co. was a large institution engaged in the milling business in Fostoria, Ohio; that Mr. Pearson, for some time prior to July 9, 1898, and for a short time afterwards, was the selling agent of the Isaac Harter Co. in the city of New York—that is, he was their representative there; he was their agent and representative in the sense that he was a commission merchant, and was the only merchant or firm authorized by the Isaac Harter Co. to sell their products in that city. He was not in their employ upon a salary, but he sold their goods as a commission merchant. He purchased the product from them, and his compensation arose from his commission. His deposition appears in the record, and in that he testifies upon this subject, agreeing with the testimony on behalf of the plaintiff.

He testified in part as follows:

"Q. What, if any, business connection did you have with this company in the year 1898? A. I represented them in handling their produce here for the sale of flour for local and export trade.

"Q. What was the nature of the business you were transacting for the company at that time? A. Buying flour from them.

"Q. You were selling flour for that company at that time? A. I was.

"Q. Upon what basis, commission or salary? A. Commission."

And further along in his deposition he repeats that he was buying the flour from them. It appears that the transactions between the Isaac Harter Co. and Pearson were carried on by about the following method: Pearson would signify to the Isaac Harter Co. what flour he desired at a given time. They would forward the flour to New York. They would consign it to themselves, and upon the bill of lading it would be stated in this form: "Consigned to the Isaac Harter Co.; notify C. H. Pearson." These bills of lading were attached to drafts upon C. H. Pearson for the amount of the flour in each instance of shipment; that is to say, for the price of the flour consigned. They would draw upon Pearson through a certain bank in New York, the name of which I do not now recall, and attach the bill of lading to the draft.

It appears very clear from this record that Pearson was not authorized and had no right to obtain possession of the flour that was shipped to New York until he had paid these drafts, and become possessed of the bill of lading, upon presentation whereof to the railroad company the flour would be delivered to him. But by some arrangement with an officer or employe of the railroad company—the West Shore Co. I believe it was—Pearson had, prior to July 9, 1898, obtained possession of a large amount of this flour without paying the drafts. I may say, by the way, that subsequently on account of this the Isaac Harter Co. presented its claim to the railroad company for having delivered the flour to Pearson without authority, and it is said (though I am not sure that it appears in this record, but it is said and it is not contradicted), that they collected from the railroad company without any trouble the amount of the value of the flour which it had delivered to Pearson without authority.

Upon July 9, 1898, Day appeared in New York on behalf of the Isaac Harter Co. to effect a settlement with Pearson of an unsettled open account amounting to about $2,500, and the readjustment of some indebtedness of Pearson's upon notes, amounting to $2,000, the sum of the two being about $4,500. It appears from the testimony that Day was not aware, and it does not appear from the testimony that any of the company were aware at that time that Pearson had obtained possession of this flour without payment of the drafts. The company knew that the

drafts had not been paid, but, as the record shows, they supposed the drafts and the bills of lading were still in the bank, and that consequently the flour was still with the railroad company. Day called upon Mr. Pearson and asked him to adjust these two claims, one for $2,500 and the other for $2,000. At the instance of Pearson they called upon Brown, Pearson apparently expecting that Brown would give him some assistance about settling these matters. Mr. Day said to Brown that the indebtedness of Pearson to the Isaac Harter Co. at that time amounted to $4,500. It appears that as a matter of fact Pearson had at that time wrongfully obtained possession of flour amounting to something over $8,000. Brown contended in the court below, and contends here, that because of this state of facts with respect to the flour obtained by Pearson, the indebtedness of Pearson to the Isaac Harter Co., instead of being $4,500, was as much more as the value of this flour, to wit, something over $8,000 more. He claims, in other words, that Pearson was indebted to the Isaac Harter Co. over $12,000 instead of only $4,500, and that because of this false representation he should be discharged.

There was not much controversy over these facts. On behalf of the defendant in error it is contended that there were some circumstances in the case tending to show that the Isaac Harter Co. at the time knew of this wrong that had been perpetrated by Pearson, and of this liability of Pearson to them on account of the flour which he had unlawfully obtained.

If the company knew it, it might be inferred from what Mr. Day said that there was some false suggestion in his representation that the whole indebtedness was $4,500; or that there was some suppression of the truth; that the full literal truth was not told, as it should have been, to Brown; but we are called upon to sustain the verdict upon the theory that the Isaac Harter Co. did not know at the time this note was taken that they had been defrauded or wronged by Pearson.

After the note was given, perhaps in the afternoon of the same day, Mr. Day became aware of these facts by investigation; but what he afterwards learned of course could not affect the rights of the parties as they became fixed by the transaction at an earlier period upon the ninth of July.

With respect to representations of this character, the court charged the jury as follows:

"The question, therefore, which you must decide from the evidence, is whether the plaintiff through Mr. Day falsely represented to the defendant that the indebtedness of Pearson to the plaintiff was only about

$4,500, and if such representation was false, whether it was material, and whether Brown had the right to rely upon it, and was actually induced by it to sign the note.''

And again:

''If you find that the representation made by Day as to Pearson's indebtedness was untrue, it is not necessary for the defendant to prove that the plaintiff or Day knew that the representation was untrue. If in fact the statement was false, even although honestly made, and if it was material, and Brown had a right to rely upon it, and was induced by it to sign the note, then a good defense to the note is shown, and the plaintiff cannot recover upon the note.''

That, we think, under the authorities, correctly states the law. Such a representation, where the party making the representation is not acquainted with the facts, and where it turns out that his representation is untrue, though he made it in good faith, is in the nature of a warranty. It is not deceit, it is not fraud, in the sense that one has falsely deceived another, but it stands upon the doctrine of warranty: he must make good that which he represents to be true.

But the plaintiff in error insists that what Day represented to Brown upon this occasion was in fact true; that the whole indebtedness of Pearson was $4,500; that this liability of Pearson to the Isaac Harter Co. on account of the fraud which he had perpetrated upon them and perhaps upon the railroad company, was not in the nature of an indebtedness. And the case here seems to turn upon the question whether the liability of Pearson growing out of his fraudulent transaction was of the nature of an indebtedness to the Isaac Harter Co. With respect to that the court charged the jury as follows:

''It is admitted here upon all hands that the statement or representation made by Mr. Day to Mr. Brown on July 9, 1898, before the note was signed, was that the indebtedness of Pearson to the plaintiff was at that time the sum of about $4,500. The first question, then, is, was that statement false or untrue? In other words, was Pearson at that time indebted to the plaintiff in an amount largely or materially in excess of $4,500? Under the evidence in this case, the answer to that question depends largely upon what you find to be the transactions between Pearson and the plaintiff prior to July 9, which related to the shipment of flour by the plaintiff to New York and the obtaining possession of the flour by Pearson without paying the drafts drawn on him by the plaintiff. And upon that subject I say to you this: if before July 9, 1898, Pearson obtained possession of the flour which had been shipped by the plaintiff to

New York without paying the drafts drawn on him by the plaintiff, he then became indebted to the plaintiff for the amount of such drafts, and if this indebtedness existed upon July 9, and if the indebtedness of Pearson to the plaintiff upon that day, including the amount of the indebtedness upon the drafts, exceeded to any material extent the sum of $4,500, then the representation that the debt was only $4,500 was untrue or false.''

That is stated by the court without reference to the question whether Mr. Day or the Isaac Harter Co. was aware of this liability on account of the flour unlawfully obtained. In other words, the court charges that this liability was an indebtedness, at that time, of Pearson to the Isaac Harter Co. This seems to have left very little for the jury to do.

That this representation would be material cannot be questioned. The difference between $4,500 and the real indebtedness, as the court construes this claim, was so great as to make it clearly material. Mr. Brown testifies that if he had known of this liability he would not have signed.

Now, was this an indebtedness at this time? Clearly there was a liability of Pearson to the Isaac Harter Co. But the transaction was such as that Pearson was liable to the Isaac Harter Co. for a tort that he had committed in unlawfully obtaining possession of and converted their property. The law gave to the Isaac Harter Co. a choice of remedies. They could proceed on account of the tort to recover damages for the trespass and asportation; or they might, if they could come at the property, recover it by replevin; or they might, if they chose to do so, waive the tort and sue for the value; but this right to waive the tort and sue for the value, proceeding upon the fiction that Pearson had purchased the property from them and had promised to pay for it, was a right of the Isaac Harter Co.; it was not the right of Pearson. So far as Pearson was concerned, the Isaac Harter Co. might insist on proceeding on account of tort. Certain consequences would follow from this election to proceed upon *indebitatis assumpsit;* for if the Isaac Harter Co. should proceed in that way upon that election, it is probable that under the law, it could not thereafter proceed on account of tort.

There is some difference in the authorities on this proposition, some holding that the right to proceed on account of tort is not taken away until the judgment obtained in the action of assumpsit has been satisfied; but certainly after satisfaction of the judgment in assumpsit the right to proceed on account of tort is at an end. But this was a right or election lodged in the Isaac Harter Co. Pearson had no right to elect to treat

this as an indebtedness as upon a contract.  How, then, can the courts at
the instance of Brown, treat this as in the nature of an indebtedness?
It was the right of the Harter Co. alone to so elect.  Clearly, under this
record, they had not elected to treat this as a contractual obligation.  They
could not so elect until they had become aware of the facts.  We are sat-
isfied from this record that they did not become aware of the facts until
after the note in this case had been given.  According to our view of the
results of the transaction at the time this note was given, the Isaac Harter
Co. still owned this flour; and owning the flour, it could not have a claim ·
for its value based upon its sale to Pearson.  Such claim could not
arise until, with knowledge of the facts the company had elected to waive
the tort and regard the transaction as a sale.

Had they proceeded to enforce such claim, they must have proceeded
upon the theory and upon the fiction that Pearson had purchased the
flour, and had promised to pay for it.  This is one of the fictions of the
law that appears still to obtain, notwithstanding our changes in the law
of procedure.  It has become a part of the substantive law, founded upon
the policy of the law.  In an action of assumpsit upon this pretended
contract, upon it being shown that he had obtained this flour and con-
verted it, Pearson would not be permitted to dispute the averment that
he had promised to pay for it; and it is only by virtue of that
fiction, and by virtue of the fact that he would not be permitted to dispute
that allegation, that the action of assumpsit upon this transaction could
be maintained.

Now, as I have said, the representation of Day. to Brown was, that
the indebtedness of Pearson at that time was $4,500, and no more.  As
Pearson puts it in his deposition, Day said to Brown that Pearson was
then owing the Isaac Harter Co. $4,500.  It appears that in connection
with that statement Day stated to Brown the items of that indebtedness
—the $2,000 on the note and the $2,500 item on the account.  That repre-
sentation, having been made in entire good faith, with no
purpose to conceal facts which ought to have been made known
to Brown, the language of Mr. Day should not be extended beyond its
natural and legitimate meaning.  If he had known the other facts, and
it could be fairly found and held that he was guilty of a suppression of
some matter that he should have stated, perhaps it would be competent
for the jury to enlarge the meaning and significance of the terms that
he used; but having used the language in good faith, and its import
and effect standing rather upon the doctrine of warranty than misrep-

resentation or deceit, the language should be given its natural meaning, and should not be enlarged or extended beyond that. And giving it that construction, we hold that the statement was true and correct; that the indebtedness of Pearson at that time was $4,500 and no more; and we hold, therefore, that the court of common pleas erred in charging the jury to the effect that this liability amounted at the time to an indebtedness; and on account of this error the judgment of the court of common pleas will be reversed; and, as I have indicated, there being a claim that there is some evidence tending to show that the company knew of this state of facts, so that the verdict may be sustainable on that theory, we go further, and hold that the verdict is against the weight of the evidence.

Reversed and remanded.

**Hull** and **Haynes, JJ.,** concur.